UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION,

                    Plaintiff,                          Case No. 13-cv-11037

v.                                                      Honorable Thomas L. Ludington

DEUTSCHE SOLAR GmbH,
f/k/a DEUTSCHE SOLAR AG,

                    Defendant.

_____/

**ORDER DENYING MOTION FOR RECONSIDERATION**

Defendant Deutsche Solar GmbH moves for reconsideration of this Court's May 7, 2015 Opinion & Order striking Deutsche Solar's affirmative defense of illegality. *See* Def.'s Mot. for Recons., ECF No. 67. Deutsche Solar argues that the May 7, 2015 Opinion & Order contained defects of fact and law. It maintains that correcting those palpable defects will result in a different disposition than that ordered in the May 7, 2015 Opinion. Specifically, Deutsche Solar argues that the Court erroneously considered only one of its two arguments that the Supply Agreements are illegal under European Union antitrust laws. Had the Court considered both, Deutsche Solar argues, it would have concluded that its affirmative defense of illegality should be sustained. Hemlock responds that the Court may have overlooked one of the proposed grounds of illegality, but that the ground has no merit and should not alter the Court's analysis. Hemlock also disagrees with the assertion that the Court committed an error of law in the manner it reviewed Deutsche Solar's affirmative defenses.

While Deutsche Solar has identified a palpable defect of fact in the May 7, 2015 Opinion, rectifying that defect would not change the disposition of the opinion. Deutsche Solar's motion for reconsideration will be denied.

**I.**

The facts germane to the dispute underlying Deutsche Solar's motion for reconsideration are familiar to all parties. They will be recounted here for completeness.

**A.**

Hemlock Semiconductor, Plaintiff in this action, is a Michigan corporation involved in the manufacture and sale of polycrystalline silicon and photovoltaic solar cells and modules. ECF No. 1 at ¶¶ 2, 3, 7.

Deutsche Solar GmbH, Defendant in this action, is a German limited liability company involved in the production of multicrystalline silicon wafers, "which are the building blocks of photovoltaic solar cells and modules." ECF No. 1 at ¶ 8.

**B.**

Hemlock filed its complaint on March 7, 2013. The parties engaged in discovery until August 22, 2014, at which point the parties requested a status conference. During the conference, the parties informed the Court of a dispute regarding discovery requests that could potentially relate to a number of Deutsche Solar's affirmative defenses. These defenses, as identified in Deutsche Solar's Answer, are:

> 6. The Supply Contracts as Plaintiff seeks to enforce them are illegal, and/or the enforcement of the Supply Contracts would make the Court a party to a violation of European Union antitrust law.
>
> . . .
>
> 12. Any required performance on the part of Deutsche Solar is excused by the doctrine of commercial impracticability.

- 2 -

13. Any required performance on the part of Deutsche Solar is excused by the doctrine of frustration of purpose.

14. Any required performance on the part of Deutsche Solar is excused by the doctrine of force majeure.

15. Any required performance on the part of Deutsche Solar is excused by the supervening intervention of one or more third parties.

16. Any required performance on the part of Deutsche Solar is excused by the illegal dumping of solar panels by the Chinese Government and Chinese producers, which caused a fundamental disruption in the market that was not foreseen or foreseeable by the parties at the time of their agreements.

Def.'s Answer, ECF No. 14 at 11-12.

## C.

Hemlock and Deutsche Solar, beginning "[i]n or about August 2005, . . . entered into [four] Long Term Supply Agreement[s], pursuant to which Deutsche Solar agreed to purchase and Hemlock agreed to supply, polycrystalline silicon[.]" ECF No. 1 at ¶ 9. Deutsche Solar agreed to purchase certain defined quantities of polycrystalline silicon in accordance with a schedule outlined in the agreements. *Id*. The parties agree that the effective dates found in the supply agreements are as follows:

The first Long Term Supply Agreement . . . is effective from August 30, 2005 to December 31, 2015. The second Long Term Supply Agreement . . . is effective from June 10, 2006 to December 31, 2018. The third Long Term Supply Agreement . . . is effective from June 27, 2007 to December 31, 2019. The fourth Long Term Supply Agreement . . . was effective from January 1, 2010 to December 31, 2012.

ECF No. 1 at ¶ 10.

Hemlock alleges that these agreements took the form of "take or pay" contracts "such that Deutsche Solar is required to pay the full purchase price for [polycrystalline silicon] scheduled to be purchased each year, regardless of whether Deutsche Solar actually takes delivery of the product." ECF No. 1 at ¶ 11. Under this construction of the agreements,

"Deutsche Solar's scheduled purchases over the respective terms of the four Supply Agreements totaled 24,390,000 kilograms" of polycrystalline silicon. *Id*. at ¶12.

Deutsche Solar denies that the Supply Agreements were of the "take or pay" type and so also contests the amount of polycrystalline silicon they agreed to take in delivery. ECF No. 14 at ¶¶ 11, 12. According to Deutsche Solar, the parties "subsequently modified the agreements by agreement and by their conduct." *Id*. at ¶ 10. Hemlock confirms in its motion to strike that "[t]he parties occasionally amended and restated the Supply Agreements between 2008 and 2011." ECF No. 36 at 1.

### D.

In March of 2012, Deutsche Solar communicated with Hemlock that it was no longer comfortable with the pricing terms of the Supply Agreements. The parties disagree as to the interpretation of the two letters, sent by Deutsche Solar's CEO to Hemlock management, attached to Hemlock's complaint as Exhibits 5 & 6. The parties do agree, however, that "Deutsche Solar  . . . has not purchased any [polycrystalline silicon] from Hemlock since March 31, 2012 and that it has placed no purchase orders for [polycrystalline silicon] with Hemlock." ECF No. 14 at ¶ 18.

On October 12, 2012, Hemlock sent a letter to Deutsche Solar seeking "adequate assurance that Deutsche Solar will fully perform its obligations under its four [Supply Agreements with Hemlock.]" ECF No. 8, Ex. 7. On October 16, 2012, Deutsche Solar responded to Hemlock's letter and stated, among other things, that "Deutsche Solar is committed to fulfill its obligations under the Long Term Supply Agreements as amended from time to time." *Id*., Ex. 8. In a reply to this letter, Hemlock expressed its belief that Deutsche Solar's assurances

were inadequate and that "Deutsche Solar's October 16 response fails to provide the requisite assurances contemplated by MCLA § 440.2609 and applicable Michigan law[.]" *Id.*, Ex. 9.

Five months later, on March 4, 2013, Hemlock issued Deutsche Solar an invoice in the amount of $83,971,500.00, which it believed represented the value of polycrystalline silicon that Deutsche Solar did not purchase during 2012. ECF No. 1 at ¶ 25. Hemlock alleges that "on March 5, 2013, Deutsche Solar responded by letter, formally objected to the invoice, and claimed the Supply Agreements are 'null and void.'" *Id.*[1] Deutsche Solar admits that Hemlock issued such an invoice and that it "disputed the accuracy and validity of the invoice." ECF No. 14 at ¶ 25.

## II.

A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997).

## III.

Deutsche Solar makes two primary arguments in its motion for reconsideration. First, it argues that the Court made a palpable error of fact in its May 7, 2015 Opinion. The Court did not address one of the two ways in which the Agreements could be illegal under EU antitrust laws. The Court also, according to Deutsche Solar, misapprehended how EU antitrust law operated when it analyzed the other way the Agreements might be illegal. Second, Deutsche Solar claims

---

[1]   A copy of this letter was not attached to Hemlock's complaint.

that the Court improperly applied the standard for striking an affirmative defense. This, Deutsche Solar contends, is a palpable error of law that requires a different disposition. Deutsche Solar's claims are without merit.

## A.

Deutsche Solar alleges that this Court made two palpable errors of fact in its May 7, 2015 Opinion. Deutsche Solar first argues that this Court misconstrued the manner in which the market-share prohibition in EU antitrust law operates. Second, Deutsche Solar argues that this Court omitted consideration of one of the grounds that Deutsche Solar relies on for its assertion that the Supply Agreements are invalid under EU antitrust laws. One of these arguments, the latter, correctly identifies a palpable defect in this Court's prior opinion. The Court's conclusion, however, is unaffected by the defect.

## 1.

Deutsche Solar argues that this Court did not properly consider how the market-share limitations imposed by EU antitrust law actually function. Under EU antitrust law, the burden to demonstrate that the market-share limitations do not apply to a prohibited contract condition rests with Hemlock. Thus, Deutsche Solar need only allege a contract condition in violation of EU antitrust law concerning vertical restraints and then Hemlock must defend against the claim by proving it fits in a market capitalization exception. According to Deutsche Solar, the fact that this procedure went unrecognized in the Court's May 7, 2015 Opinion constitutes a palpable error that requires reconsideration. It does not.

The Court's opinion sought to explain how the predominant-demand antitrust claim is not cognizable as an affirmative defense. Deutsche Solar takes exception, explaining that under EU antitrust law the "complex proof of monopoly power" must be made in the negative by Hemlock

in response to a predominant-demand allegation, rather than in the affirmative by Deutsche Solar in support of a predominant-demand allegation. While that may be true, Deutsche Solar does not explain how that changes the analysis. The defense still falls squarely within the holding of *National Souvenir Center, Inc. v. Historic Figures, Inc.*, 728 F.2d 503 (D.C. Cir. 1984) that *Kelly v. Kosuga*, 358 U.S. 516 (1959) does not permit such defenses. Deutsche Solar has merely demonstrated that there is a procedural difference under European Law that gives rise to the same complex proofs warned against in *National Souvenir*. Deutsche Solar's defense is, accordingly, no less speculative in nature.

**2.**

Deutsche Solar also alleges that the Court's May 7, 2015 Opinion ignores one of the grounds under EU antitrust law supporting its affirmative defense of illegality. The illegality alleged by Deutsche Solar is a prohibition on the resale of the product. Under EU antitrust laws this is a "hardcore" restriction to which there is no market-share exemption. *See* Commission Regulation (EU) No. 330/2010 Article 4. Deutsche Solar is correct that the May 7, 2015 Opinion does not address this alternative ground of illegality. This was error. It does not, however, alter the conclusion. The guidance of the *Kosuga–Kaiser Steel* line of cases still applies: where the alleged illegality is collateral to the contract provision sought to be enforced an affirmative defense of illegality under antitrust law cannot be sustained.

In support of its argument for reconsideration, Deutsche Solar claims that the prohibitions on resale in the Agreements are inextricably intertwined with the take-or-pay provisions of the Agreements. In support of this proposition Deutsche Solar cites to two cases from the German Bundeskartellamt (akin to the Federal Trade Commission):  Bundeskartellamt [BKartA] [Federal Cartel                Bureau]                July                5,                2010,                B10-48/09,

http://www.bundeskartellamt.de/SharedDocs/Entscheidung/DE/Entscheidungen/Kartellverbot/20

10/B10-48-09.html, & BKartA July 19, 2010, B10-18/10,

http://www.bundeskartellamt.de/SharedDocs/Entscheidung/DE/Entscheidungen/Kartellverbot/20

10/B10-18-10.html. Both of these cases support the claim that a take-or-pay provision can

violate EU antitrust laws when operating in conjunction with a resale prohibition provision. See

BKartA July 5, 2010, B10-48/09 ¶ 31; BKartA July 19, 2010, B10-18/10 ¶ 26. As the

Bundeskartellamt observed[2]:

> A take-or-pay agreement . . . causes the buyer to lose the right to the delivery of
> the item in the case of an acceptance default. The delivery obligation of the
> supplier is hereby linked to a temporal condition. The quantity risk is carried by
> the buyer and the price risk by the supplier. The take-or-pay agreements as such
> are not being targeted by the [BKartA]. Take-or-pay agreements, however, appear
> problematic to the [BKartA] in combination with a resale prohibition . . . . The
> resale prohibition results in a situation where the supplier . . . bears neither a price
> nor a quantity risk. In contrast, the supplier has the opportunity to quasi sell the
> [item] twice and thereby achieve an additional profit regardless of the amount of
> the prevailing market price. The buyer, however, bears the full quantity risk. . . .
> In this respect, the restriction on competition in the form of the resale prohibition
> associated with the [take-or-pay] agreements . . . does not appear at all essential.

*Id.*[3]

The Bundeskartellamt explained that the take-or-pay provision allows a seller to reap a

double-benefit during market conditions that are unfavorable to a buyer. The buyer will not take

because it has no use for the product and, as the Bundeskartellamt posits, likely has limited

storage capacity. So once the buyer's use and storage capacity reaches its limit, the

Bundeskartellamt posits, the buyer will cease to take possession of the product and thus, the

---

[2] Deutsche Solar provided certified translations of the two cases. The quotes are taken from those translations.

[3] References by the BKartA to "minimum delivery requirements" have been excised for clarity. The take-or-pay contracts at issue in both cases, as here, had a minimum amount of quantity the buyer had to take at each contract interval. The BKartA referred, alternatively, to minimum delivery obligations and the take-or-pay nature of the contracts when referencing the buyer's obligation to take. The references have been streamlined only for ease of reading, not to affect the substance of the BKartA's holding.

buyer will be required by the contract to pay for undelivered goods. The seller then retains the goods purchased by the buyer which the Bundeskartellamt next posits can be sold to an out-of-contract buyer. Because market conditions are not favorable, the out-of-contract buyer will pay less than the contract buyer would be forced to pay. But since the contract buyer must pay regardless, the seller reaps a benefit above that contemplated in the contract.[4]

The Bundeskartellamt focuses on the phenomenon arising from the resale prohibition and take-or-pay prohibition working in concert. A take-or-pay provision is not inherently objectionable because the contract buyer could continue to take the product and resell at a decreased price to mitigate losses.[5] The Bundeskartellamt suggests that without the take-or-pay provision, the buyer could reject delivery of unneeded product and not be liable for payment on any product it did not take. The Bundeskartellamt focused on the fact that a seller is prevented from mitigating losses through the operation of a resale prohibition in concluding that a take-or-pay contract violates EU antitrust laws. But, it should be noted that it is not the take-or-pay clause that the Bundeskartellamt found objectionable but the self-imposed obligation to buy without the ability to resell. Take-or-pay obligations, the Bundeskartellamt emphasized, do not themselves pose a monopoly problem.

Despite the Bundeskartellamt's holdings, Deutsche Solar's defense should still be stricken. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) and *National Souvenir*, as previously explained in the Court's May 7, 2015 Opinion, establishes the conditions under which two

---

[4]     For example, assume a supply contract contemplates a $10 sale price but the buyer cannot take because it has exhausted use and storage capacity. Thus, the buyer pays $10 for non-delivered goods. The seller then resells the goods for $0.05. The seller winds up with a $0.05 "windfall" because it has goods to sell that it would otherwise be committed to deliver under its contract of sale with the buyer. When scaled, this can result in significant additional profits in down markets.

[5]     In the same scenario the seller would be reselling the product for $0.05. Thus, the seller would be losing $9.95 rather than $10. The buyer would gain no additional profit in a down market beyond that contemplated in the contract.

separate provisions in an agreement are so closely intertwined as to be inextricable. Under those conditions, an affirmative defense of illegality predicated on a violation of antitrust laws may be sustained. If those conditions are not met, the defense must be stricken.

The Supreme Court first opened the door to an affirmative defense of antitrust illegality in *Kaiser Steel*. In that case, a mine-workers union brought suit against Kaiser Steel, a mine operator and smelter, for not making payments into the union trust that were mandated by the collective bargaining agreement. The problem, Kaiser Steel, argued, is that the obligation to contribute only arose when it purchased post-production coal from a mine employing non-union workers or workers from another union. The predicate condition was such that a market-distorting effect was created whenever Kaiser Steel dealt with a non-United Mine Workers-affiliated (the union at issue) coal producer. That is, the provision offending the Sherman Act could not be read as two separate and distinct conditions because the unoffending promise— Kaiser Steel's promise of trust contributions—only arose as a result of the condition that violated the Sherman Act.[6] Thus, the two could not be separated.

In *National Souvenir*, the District of Columbia Circuit Court of Appeals delimited the extent of *Kaiser Steel*'s exception to the bar on affirmative defenses based on antitrust illegality. In that case, franchisees sued their franchisor alleging that the franchise agreements they were operating under violated the Sherman Act. When they filed suit, the franchisees stopped paying the franchise fees and rent contemplated under the franchise agreement. The franchisor then counterclaimed attempting to recover the payments. The franchisees defended against the counterclaim by alleging that the entire franchise agreement violated the Sherman Act because it

---

[6]   Importantly, the Supreme Court did not determine that the purchased-coal provision (the provision encompassing the promise and the buying conditions) violated the Sherman Act. It assumed that it did.

contained an illegal tying agreement (the provision the franchisees were using to challenge the agreements in the first instance).

The D.C. Circuit struck the affirmative defense because the two conditions, two separate contract provisions, were not sufficiently connected. The obligation to make franchise fee payments and rent payments was not inextricably intertwined with the requirement that franchisees purchase or lease figurines from a certain supplier. The two agreements were not unrelated. If the franchisees wished to have their franchise they had to agree to the figurine-supply terms and they also had to pay franchise fees and rent.[7] The D.C. Circuit held that something more was needed. Fatally, "the promises to pay franchise fees in this case d[id] not appear on their face to be primarily means to enforce the allegedly illegal tie-ins between the wax figures and start-up services." *National Souvenir*, 728 F.2d 503, 515.

The two provisions at issue here, the take-or-pay and non-resale provisions, are, admittedly, birds of a slightly different feather. The non-resale provision is, under EU law, a restraint on trade that operates to *forbid* market conduct. The tying agreement in *National Souvenir* was an illegal restraint on trade that *forced* market conduct between two parties. As a result, the take-or-pay clause cannot logically "enforce the allegedly illegal" non-resale provision. Nevertheless, the rule of *National Souvenir* as articulated in the Court's May 7, 2015 Opinion still applies:

> Stated differently, not only was the promise the [*National Souvenir*] court was asked to enforce not illegal, fulfilling the promise did not force the franchisees to comply with another portion of the agreement that itself was illegal. Any illegality under a collateral provision of the agreement would only arise under the presence of specific market conditions external to the agreement and upon which the agreement does not rely.

---

[7]   It is not clear from the case, nor is it directly relevant, whether the franchisor brought any monopoly power to bear in including the tying provision in the franchise agreement.

- 11 -

May 7, 2015 Opinion 18, ECF No. 66. Indeed, the reasoning of the Bundeskartellamt corroborates the applicability of this rule. The Bundeskartellamt held that the combination of the take-or-pay clause and non-resale provisions only violated EU antitrust law during certain economic conditions. Or, as the Court wrote in its May 7, 2015 Opinion: "under the presence of specific market conditions external to the agreement and upon which the agreement does not rely." *Id*.

The *National Souvenir* court articulated a rule on the basis of the Supreme Court's guidance in *Kaiser Steel* that would preclude a party from relying on such an affirmative defense. The rule articulated in *National Souvenir* is sound and there is no compelling reason to depart from it. The reason for why Deutsche Solar's affirmative defense is not cognizable is subtle, but important. The rule does not require the Court to conclude that the Agreements at issue in this case do not violate antitrust law.[8] The Court does not need to reach the merits of Deutsche Solar's claim that the take-or-pay and non-resale provisions combine to unlawfully thwart fair competition. Importantly, the Bundeskartellamt made precisely that determination: that such a combination, under certain market conditions, did violate EU antitrust law. Conversely, the Court did not hold and does not now hold that the Agreements do not violate EU antitrust law. What the Court held in its May 7, 2015 Opinion and what it reaffirms now is: even assuming the combination of the provisions violates EU antitrust law, an affirmative defense predicated on that form of illegality is not cognizable and must be stricken. Deutsche Solar will not be granted reconsideration on this ground.

---

[8]   Deutsche Solar's motion misapprehends the distinction drawn in the *Kosuga–Kaiser Steel* line of cases as evidenced by its claim that it "Does Contend that the Agreements Are Inherently Illegal under EU Antitrust Law." Pl.'s Mot. Recons. 6, ECF No. 67. The legal theory under which Deutsche Solar's affirmative defense of illegality was stricken does not look to the inherent illegality of the agreement as a whole. It looks to the inherent illegality of the provision being sued upon.

**B.**

Finally, Deutsche Solar contends the Court committed a palpable error of law in the May 7, 2015 Opinion. Deutsche Solar argues that the Court, while reciting the proper standard for evaluating a motion to strike, did not correctly apply that standard. Deutsche Solar submits that the Court improperly "engag[ed] in an analysis of the facts and circumstances that may (or may not) apply to the defense[.]" Pl.'s Mot. Recons. 11, ECF No. 67.

This claim is without merit for the same reason as Deutsche Solar's prior claim, *see supra* § III.A.2. Deutsche Solar conflates the application of the *Kosuga–Kaiser Steel* rule with an analysis of the merits of its position. Deutsche Solar believes that its "short and plain statement of its affirmative defense" is the limit of what the Court may review when deciding a motion to strike. That is not so. While Deutsche Solar is correct that it does not need to meet the heightened pleading standards of *Iqbal* and *Twombly*, the Court's inquiry is not constrained merely to the four corners of Deutsche Solar's answer. It may review the entirety of the pleadings. *See Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (noting that the entire pleadings may be reviewed on a motion to strike). Thus, in a contract dispute, a court may look to the contract document itself to determine if an affirmative defense to a contract claim cannot succeed under any circumstances. *See Samuel Goldwyn, Inc., v. United Artists Corp.*, 35 F. Supp. 633, 637 (S.D.N.Y. 1940) (reviewing the underlying contract in deciding a motion to strike). That is the inquiry the Court engaged here. In testing Deutsche Solar's affirmative defense the Court looked only to American law; EU law, to the extent it was relevant; and the Agreements at issue in this case.

Deutsche Solar's suggestion that the Court erred likely arises from two places: first, from the fact that the Court engaged in an extended discussion of the circumstances under which an

- 13 -

affirmative defense of antitrust illegality is cognizable; and second, because the Court injudiciously used language purporting to saddle Deutsche Solar with a burden of production in response to a motion to strike.

## 1.

First, the distinction between when an affirmative defense of antitrust illegality is cognizable and when a contract violates antitrust laws is crucial. The May 7, 2015 Opinion articulated a rule that required striking Deutsche Solar's affirmative defense because the take-or-pay provision's illegality was not readily ascertainable on the contract's face and the take-or-pay provision was not inextricably intertwined with an illegal contract provision. Those are the only two situations where an affirmative defense of antitrust illegality should not be stricken. Thus, under the *Kosuga-Kaiser Steel* rule, an affirmative defense of illegality that does not fall into one of those categories cannot succeed under any circumstances. That is different than concluding that the illegality claimed cannot be upheld on the merits under any circumstances.

Put differently, Deutsche Solar's affirmative defense of illegality was stricken because it would demand complex factual proofs of illegality, not because the contract did not, on the merits, violate EU antitrust law. The Court expressed no opinion on the merits of Deutsche Solar's illegality claim and will not do so. The same can be said for Deutsche Solar's argument regarding the interplay between the take-or-pay provision and the non-resale provision. It is the fact that the provisions are not closely enough related to serve as an affirmative defense that they were stricken, not because the provisions, acting in concert, would not violate EU antitrust law.

It can be conceded that the *Kosuga–Kaiser Steel* rule creates situations where a defendant has a meritorious claim that the contract sued upon violates antitrust law but cannot rely on that claim as an affirmative defense. But that would only be a cause for greater concern if the

defendant did not have other avenues for relief. Defendants do have such avenues, ameliorating any concern that they may not receive their day in court.

**2.**

Second, as Deutsche Solar demonstrates in its brief, the Court used language in the May 7, 2015 Opinion reflective of the possibility that some burden might lay with Deutsche Solar. The language in question is as follows:

> For Deutsche Solar's affirmative defense to be sustainable they would need to show that that the take-or-pay transaction requirement under the agreements was inherently offensive to antitrust laws (the *Kosuga* prohibition) or that it is inextricably intertwined with a provision that is offensive to antitrust laws (the *Kaiser Steel* prohibition) such that it operates as a means of enforcing the illegal collateral provision.

May 7, 2015 Opinion 18-19, ECF No. 66. Deutsche Solar specifically emphasizes the Court's use of the word "show."

The choice of language is improvident to the extent it reflects a burden being placed on Deutsche Solar. More appropriately, although perhaps less clearly, the sentence should have been structured in the passive voice: For Deutsche Solar's affirmative defense to be sustainable the take-or-pay transaction requirement under the agreements must be inherently offensive to antitrust laws (the *Kosuga* prohibition) or be inextricably intertwined with a provision that is offensive to antitrust laws (the *Kaiser Steel* prohibition) such that it operates as a means of enforcing the illegal collateral provision. Alternatively, the sentence can be more accurately read by substituting "show" with "argue." That is because the question of illegality required by the *Kosuga–Kaiser Steel* rule must be apparent on the face of the contract or contracts in question. The question posed by the rule is a legal one that is not dependent on a party's factual proofs. Deutsche Solar's concern, while understandable, is misplaced. Reconsideration is not merited on this ground.

- 15 -

**IV.**

Accordingly, it is **ORDERED** that Defendant Deutsche Solar's Motion for Reconsideration, ECF No. 67, is **DENIED**.

Dated: October 28, 2015

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 28, 2015.

s/Johnetta Curry Williams
JOHNETTA CURRY WILLIAMS
Acting Case Manager