UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION,

                    Plaintiff,                           Case No. 13-cv-11037

v.                                                       Honorable Thomas L. Ludington

SOLARWORLD INDUSTRIES SACHSEN
GmbH, f/k/a DEUTSCHE SOLAR GmbH,
f/k/a DEUTSCHE SOLAR AG,

                    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR
ATTORNEYS FEES AND COSTS**

On March 7, 2013, Plaintiff Hemlock Semiconductor Corporation ("Hemlock") filed suit

against Defendant SolarWorld Industries Sachsen GmbH ("Solarworld"). ECF No. 1. The

dispute between the parties arises from a series of large-scale contracts for industrial-grade

polycrystalline silicon from Hemlock to SolarWorld. Prior to the close of discovery, the parties

contested a number of discovery- and pleading-related motions. On March 16, 2016, Hemlock

filed a motion for summary judgment. ECF No. 91. On July 13, 2016, the Court granted

summary judgment for Hemlock. ECF No. 120. The Court entered final judgment for Hemlock

in the amount of $793,467,822.91. ECF No. 123. On August 9, 2016, Hemlock filed a motion

requesting that it be awarded $2,867,892.47 in attorney's fees and $757,451.38 in costs and

expenses, for a total of $3,625,343.85. ECF No. 124. SolarWorld does not contest that Hemlock

is entitled to some attorney's fees and costs, but argues the Court should award no more than

$573,484.00 in attorney's fees and $52,793.00 in costs. For the reasons stated below, Hemlock's

motion will be granted in part. Hemlock will be awarded attorney's fees in the amount of $2,815,212.22 and costs in the amount of $757,451.38, for a total of $3,572,663.60.

## I.

### A.

The underlying facts of the dispute are summarized in the Court's order granting summary judgment. ECF No. 120. The facts outlined in that order will be adopted as if fully restated herein. However, for the sake of clarity, a brief summary of the dispute will be provided. Hemlock is a Michigan corporation that manufactures and sells polycrystalline silicon, which is used to build photovoltaic solar cells and modules. *Id.* at 2. Defendant SolarWorld[1] is a German limited liability company that produces multicrystalline silicon wafers, which are used to build solar cells and modules. *Id.*

Beginning in 2005, the parties executed four long-term supply agreements, all containing materially identical terms, which covered delivery periods through 2019. *Id.* The supply agreements were "take or payment" arrangements wherein SolarWorld agreed to pay for the product regardless of whether SolarWorld needed or accepted the deliveries. *Id.* at 3. On July 17, 2013, Hemlock sent SolarWorld a notice terminating the contracts because Hemlock had not received the payments that it believed it was owed. *Id.* at 19. Hemlock further demanded payment of liquidated damages. *Id.* at 19. This suit followed.

### B.

During discovery, a dispute arose regarding discovery requests relating to a number of SolarWorld's affirmative defenses, including the defenses that SolarWorld's nonperformance was excused because the underlying contracts violated European Union antitrust law and because

---

[1] Formerly known as both Deutsche Solar AG and Deutsche Solar GmbH. *See* ECF No. 122.

-2-

Chinese producers were illegally dumping solar panels into the market. ECF No. 66 at 2. On September 24, 2014, SolarWorld moved to compel disclosures from Hemlock related to those defenses. ECF No. 30. Hemlock then cross-moved to strike SolarWorld's affirmative defenses that formed the basis for the discovery requests. ECF No. 36. Both parties disputed the merits of both motions, filing briefs with numerous exhibits. *See* ECF Nos. 37, 39, 46, 53, 55. On February 19, 2015, SolarWorld filed a motion for leave to file an amended answer asserting a counterclaim, which advanced the same arguments SolarWorld was making in its affirmative defenses, requesting over $100 million from Hemlock. ECF No. 56. On May 7, 2015, the Court issued an order which granted in part and denied in part both SolarWorld's motion to compel and Hemlock's motion to strike and denied SolarWorld's motion for leave to file an affirmative defense. ECF No. 66. On May 18, 2015, SolarWorld filed a motion for reconsideration of the Court's order. ECF No. 67. After the parties briefed the issue, the Court denied SolarWorld's motion for reconsideration. ECF No. 86.

On March 16, 2016, Hemlock filed a motion for summary judgment. ECF No. 91. On July 13, 2016, the Court granted that motion in full and directed Hemlock to submit a proposed judgment. ECF No. 120. Thus, Hemlock prevailed in whole on its motion for summary judgment. In the opinion and order granting Hemlock's motion for summary judgment, the Court directed Hemlock to submit a request for attorney's fees, pursuant to language in the supply agreements. The first three supply agreements included the following provision:

> **Attorney Fees and Costs.** In the event of [Hemlock's] enforcement of any term or condition in the Agreement, Buyer [SolarWorld] shall be liable to [Hemlock] for all costs, including attorney fees, incurred by [Hemlock] in enforcing the Agreement and in collecting any sums owed by Buyer [SolarWorld] to [Hemlock].

Supply Agreements I, II, and III at Section 26, ECF No. 94, Exs. 1, 2, 3.

The fourth supply agreement included the following provision:

> **Attorney Fees and Costs.**  In the event of [Hemlock's] seeking to enforce any terms or conditions in this Agreement, Buyer [SolarWorld] shall be liable to [Hemlock] for all reasonable costs, including reasonable attorney fees, incurred by [Hemlock] in seeking to enforce the agreement and in seeking to collect any sums owed by Buyer [SolarWorld] to [Hemlock].

Supply Agreement IV at Section 33, ECF No. 94, Ex. 4.

Several weeks after judgment was entered in the amount of $793,467,822.91, Hemlock submitted a motion requesting attorney's fees and costs. That motion is now before the Court.

**II.**

In its Complaint, Hemlock alleged that the Court had jurisdiction over the breach of contract claims under Michigan law because complete diversity existed between the parties. *See* Compl. at ¶¶ 4, 26–71. In diversity cases, state law governs the award of attorney's fees. *See Auto. Support Grp., LLC v. Hightower*, 503 F. App'x 411, 421 n.5 (6th Cir. 2012); *Miller v. Alldata Corp.*, 14 F. App'x 457, 468 (6th Cir. 2001); *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 914 (W.D. Mich. 2009). Thus, Michigan law applies to the analysis of Hemlock's request for attorney fees. Under Michigan law, parties can include a contractual provision which requires the breaching party to pay the other side's attorney fees and costs. *Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 299, 386 N.W.2d 177, 183 (1986). However, the award of attorney fees must be reasonable. *Id.* The burden of proving that requested fees are reasonable rests with the party requesting them. *Smith v. Khouri*, 481 Mich. 519, 528 (2008).

The process by which reasonable attorney fees are calculated and awarded under Michigan law proceeds in three steps. First, the court must determine the "fee customarily charged in the locality for similar legal services." *Id* at 530. The market rate must be determined

-4-

separately for each attorney who seeks to recover a reasonable fee. *Adair v. Michigan (On Fourth Remand)*, 301 Mich. App. 547, 556 (2013). "[R]easonable fees are different from the fees paid to the top lawyers by the most well-to-do clients." *Smith*, 481 Mich. at 533. Further, "the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality." *Id.* at 532. Typically, Michigan courts rely on "testimony or empirical data found in surveys or other reliable reports," like the State Bar of Michigan's Economics of the Law Practice Surveys. *Id.* at 531. *See also Goodman v. Doe*, No. 323615, 2016 WL 3429772, at *11 (Mich. App. June 21, 2016) ("Trial courts routinely consider the data presented in surveys, including the Economics of the Law Practice Surveys."); *Van Elslander v. Thomas Sebold & Associates, Inc.*, 297 Mich. App. 204, 229 (2012).

After determining the market rate for the attorney's work, "the court must determine the reasonable number of hours expended by each attorney." *Smith*, 481 Mich. at 532 (citing *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (explaining that excessive, unnecessary, or redundant hours should be excluded from the attorney fees computation). Like when establishing the market rate, the "fee applicant bears the burden of supporting its claimed hours with evidentiary support." *Id.* at 532. The "itemized bill" is not by itself "sufficient to establish the reasonableness of the fee." *Petterman v. Haverhill Farms, Inc.*, 125 Mich. App. 30, 33, 335 N.W.2d 710, 712 (1983).

Once the court has determined the reasonable hourly rate and the reasonable number of hours billed, the court must multiply the two numbers to create a "baseline figure." *Smith*, 481 Mich. at 533. At that point, the court "should consider . . . other factors and determine whether they support an increase or decrease in the base number." *Id.* Those factors are as follows:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services, (2) the difficulty of the case, i.e., the novelty and difficulty of the

questions involved, and the skill requisite to perform the legal service properly, (3) the amount in question and the results obtained, (4) the expenses incurred, (5) the nature and length of the professional relationship with the client, (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer, (7) the time limitations imposed by the client or by the circumstances, and (8) whether the fee is fixed or contingent.

*Pirgu v. United Servs. Auto. Ass'n*, 499 Mich. 269, 282 (2016).

If the court considers a factor which was not enumerated, the court must expressly indicate that fact and "justify the relevance and use of the new factor." *Smith*, 481 Mich. at 531 n.15.

### III.

### A.

In the first stage of the attorney fees analysis under Michigan law, the Court must determine the customary local rate. In its motion, Hemlock identifies a large team of attorneys and support staff which worked on this suit. Hemlock is represented primarily by Orrick, Herrington, & Sutcliffe LLP, a prominent New York law firm. Orrick gave Hemlock a 10% discount on the majority of the work provided by Orrick and has given Hemlock a 13% discount since early 2015. Ansbro Decl. at 2, ECF No. 124, Ex. 2; Detailed Monthly Invoices (Redacted) at 187–269, ECF No. 124, Ex. 10. The team was led by two Orrick partners: J. Peter Coll, who billed rates ranging from $955 to $1095 an hour, and John Ansbro, who billed rates ranging from $750 to $885 an hour. A number of Orrick associates also billed time on the case. *See* Biographies of Orrick Associates, ECF No. 124, Ex. 5. Alvin Y. Lee billed at rates ranging from $645 to $700 an hour. Summary of Billings for Principal Counsel at 2, ECF No. 128, Ex. 2. Daniel W. Robertson billed at rates from $615 to $765 an hour. *Id.* at 2–3. Thomas N. Kidera billed at rates which ranged from $525 to $700 per hour. *Id.* at 5–6. Orrick also utilized a number of discovery attorneys and support staff. *See* List of Discovery Attorneys and Support Staff, ECF

-6-

No. 124, Ex. 6. Most document review attorneys bill at $80 an hour. *Id.* Team leaders for the document review attorneys billed at rates ranging from $160 to $250 an hour. *Id.* Members of Orrick's support staff billed at rates ranging from $180 to $315 per hour. *Id.*[2]

Orrick has also employed local counsel, as required by Eastern District of Michigan Local Rule 83.20(f). Miller, Canfield, Paddock, and Stone P.L.C. served as local counsel from March 2013 to July 2015. Attorneys from Miller billed at rates ranging from $325 to $560. *See* Detailed Monthly Invoices (Redacted) at 269–342. From July 2015 through the present, Braun, Kendrick, Finkbeiner P.L.C. has served as local counsel for Orrick. Attorneys for Braun billed at rates of $275 per hour. *See* Detailed Monthly Invoices (Redacted) at 343–356. As required by Michigan law, the customary local rate will be determined separately for each attorney (or, when teams worked on the same project and billed the same rate, for each class of attorney). *See Adair*, 301 Mich. App. at 556.

### 1.

SolarWorld argues that the customary local rate for partners of the skill and experience of Mr. Coll and Mr. Ansbro is $450 per hour. In support of that argument, SolarWorld references the State Bar of Michigan's Economics of the Law Survey for 2014. Economics of Law Survey, ECF No. 128, Ex. 1. Specifically, SolarWorld argues that the customary local rate for the Orrick partners would be the 95th percentile rate that lawyers in Bay County charge: $450 per hour. Hemlock offers no testimony or empirical data showing that the fees Mr. Coll and Mr. Ansbro charged are customary local fees, other than an affidavit by Mr. Ansbro and several case citations. *See* Ansbro Decl. at 4. But a party cannot satisfy its burden of showing what the customary local rate is by merely providing an affidavit or other anecdotal testimony. *See Smith*,

---

[2] All hourly rates in this paragraph are pre-discount.

481 Mich. at 531. Rather than providing empirical data, Hemlock cites several Sixth Circuit cases for the proposition that a district court may look beyond the local community to the national market when determining the standard, reasonable rate for attorney fees. *See Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 276–77 (6th Cir. 1983). But both those cases involved federal causes of action, meaning that the federal standard for determining attorney fees was used. Absent a showing that these federal cases have been approvingly cited or adopted by Michigan courts, they do not offer relevant authority on issues of Michigan law. For that reason, it would be "inappropriate" for this Court to rely on those decisions and all other federal decisions cited by Hemlock which apply the federal standard for attorney fees awards. *See Poly-Flex Const., Inc.*, 600 F. Supp. 2d at 914 ("[I]t is inappropriate for [Defendant] to cite federal decisions as authority on attorney-fee issues without showing that the federal decision in question has been adopted or quoted with approval by a Michigan court."). In fact, the Michigan Supreme Court has explicitly rejected the "federal lodestar method" for calculating the reasonableness of attorney fees. *See Smith*, 481 Mich. at 537 (citing *Michigan Dep't of Transp. v. Randolph*, 461 Mich. 757, 766 n.11 (2000) ("We likewise reject the . . . argument that the 'lodestar' method is the 'preferred' way of determining the reasonableness of requested attorney fees.")).

The Court is unable to find any Michigan authority which offers guidance on identifying the "locality" for purposes of determining the customary fee. Although Michigan law applies in this case and the suit was litigated in Michigan, Orrick is based in New York and conducted the large majority of its work on the case from that New York office. Orrick attorneys also traveled overseas periodically to conduct depositions. *See* London Deposition Transcripts, ECF No. 128, Ex. 4. SolarWorld is represented by Cohen & Grisby, P.C., a well-respected Pittsburgh-based

-8-

firm with considerable experience in complex civil litigation. Because of the global nature of this suit, considering only Michigan billing rates would be underinclusive. Hemlock bears the burden of providing evidence of the customary fee and has offered only one non-anecdotal source which provides information on customary billing rates in New York. In *Themis Capital v. Democratic Republic of Congo*, the Southern District of New York noted that billing rates in excess of $1,000 were not uncommon for partners at large New York firms working on complex commercial litigation. No. 09 CIV. 1652 (PAE), 2016 WL 817440, at *4 (S.D.N.Y. Feb. 22, 2016). *See also Themis Capital v. Democratic Republic of Congo*, No. 09 CIV. 1652 PAE, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014).[3]

SolarWorld's primary source in opposition to Hemlock's request for attorney fees is the State Bar of Michigan's Economics of the Law Survey for 2014. The Court has a duty to independently review this source and determine "what information contained in [the survey] is most relevant and helpful to a determination of the market rate." *Adair*, 301 Mich. App. at 559. The proper baseline for comparison is not the 95% percentile hourly rate for attorneys in the Bay City area. *See* Economics of the Law Survey at 5. Orrick is providing specialized legal services here that not all firms, especially small firms in smaller regional markets, are capable of providing. *See Adair*, 301 Mich. App. at 559 ("The market for other areas of legal practice with broader client bases and greater demand provide no probative information regarding what constitutes the proper market for . . . specialized legal services."). Hemlock is currently litigating a large number of lawsuits involving Hemlock's supply agreements in a number of courts in Michigan and New York. *See* Pl. Br. at 11, ECF No. 124. In this case, Orrick was required to research and litigate complex issues, including issues of international law. Orrick also had to

---

[3] Although not empirical surveys, recent court decisions appear to constitute relevant evidence of customary rates in a locality. *See Poly-Flex Const., Inc.*, 600 F. Supp.2d at 920 (noting that evidence of "recent court decisions awarding fees at rates equal to or higher" than the defendant's request would be ideal).

engage in significant discovery overseas, including producing documents in a foreign language. Because of the global nature of this dispute, limiting the customary fee determination only to the Bay City area would be arbitrary and unreasonable. *See id.* (relying on statewide data because the plaintiffs' attorneys represented individuals from across the state). Additionally, although the Economics of the Law Survey lists hourly rates by field of practice, it does not specifically identify the normal hourly rates for complex, global, civil litigation. *See* Economics of Law Survey at 6–7.

Accordingly, the information in the Economics of Law Survey provides a bottom range for the customary fee in the locality for legal services of this type provided by lawyers of this ability and experience. But, because of the nature of this suit, that survey does not provide specifically tailored information such that it can be exclusively relied on. Like in *Adair*, the Court concludes here that the statewide data in the survey provides more probative information. According to the survey, attorneys working in firms of more than 50 attorneys, like Orrick, bill in the 95th percentile at an hourly rate of $570. That rate is a reasonable starting place for determining customary fees in the locality for attorneys of the caliber of Mr. Coll and Mr. Ansbro.

However, there is evidence that the actual customary rate in the locality is higher than $570 per hour. First, Hemlock has paid the fees in question. That fact, although not dispositive, is relevant because "it is reflective of competition within the community for business and typical fees demanded for similar work." *Van Elslander*, 297 Mich. App. at 234. *See also Adair*, 301 Mich. App. at 748. The market has apparently valued Mr. Coll's and Mr. Ansbro's work at approximately $1000 and $800 per hour respectively. Second, Hemlock has provided some non-anecdotal evidence that the rates requested here are reasonable when a firm of Orrick's size and

-10-

prestige conducts work of this kind. *See Themis Capital*, No. 09 CIV. 1652 (PAE), 2016 WL
817440, at *4 (S.D.N.Y. Feb. 22, 2016). Mr. Coll, a partner with more than 50 years of
experience, is currently billing at approximately $953 per hour ($1,095 minus the 13%
discount).[4] Mr. Ansbro, a partner with over twenty years of experience, is currently billing at
approximately $770 per hour ($885 minus the 13% discount). In *Themis*, the court approved an
hourly rate of $1,000 for a partner at a large firm with merely 20 years of experience. *Id.* Thus,
the rates requested by Orrick appear consistent with reasonable and customary rates paid to other
high-caliber lawyers working in this practice area.

Finally, the Court notes that, because of the large team of attorneys which worked on this
case, Mr. Coll and Mr. Ansbro billed fewer hours than they otherwise would have. "Blended
fees" are a relevant factor to consider when determining a reasonable and customary attorney fee
because it allows highly qualified attorneys to focus their attention on only the most important
issues and thus bill fewer hours. *See Van Elslander*, 297 Mich. App. at 237. If the total fee billed
by Orrick in this case is divided by the number of hours worked, the "blended fee" comes to
approximately $470 an hour. Significantly, Michigan attorneys working in firms of more than 50
attorneys in the 75th percentile bill at an hourly rate of $475. Economics of Law Survey at 5.
Given Orrick's demonstrated competence and experience in this lawsuit and Orrick's national
reputation for high-quality work, it is reasonable to compensate Orrick at a level consistent with
the 75th percentile of large Michigan firms.

For the reasons stated above, the Court finds that the actual billing rates of Mr. Coll and
Mr. Ansbro were reasonable.

---

[4] The rates for all attorneys involved in this case have marginally risen year over the year. The Court recognizes that
hourly rates rise in response to changes in experience and seniority and outside market factors. Because the rates
currently being billed (the highest) are customary and reasonable within the locality once all factors are considered,
the Court will not individually analyze each rate charged at different times during Orrick's representation of
Hemlock.

**2.**

SolarWorld also challenges the rate at which Orrick associates billed on this case. As already mentioned, during the course of the litigation Orrick associates billed hourly rates ranging from $473 to $666 per hour ($525 to $765, minus the discount). SolarWorld asserts that the customary fee would be $250 per hour, which is the 75th percentile rate for lawyers in the Bay City area. *See* Economic of Law Survey at 5. For the same reasons which are stated above, the Court believes that the more accurate number would be the 75th percentile hourly rate for Michigan attorneys working in large firms, which would be $470 per hour. Further, the Court believes, as already articulated, that the complex, global nature of this lawsuit justifies a finding that the customary fee is higher. In *Themis*, the court approved hourly rates ranging from $435 to $730 for associates from a large New York firm working on complex commercial litigation. 2016 WL 817440, at *4. Thus, Orrick is seeking rates which are consistent with those charged by attorneys of this caliber and practice area. For effectively the same reasons articulated above, the Court finds that the actual billing rates of the Orrick associates were reasonable and customary.

**3.**

SolarWorld further challenges the rate charged by the local firms retained by Orrick. Attorneys from Miller charged at hourly rates ranging from $325 to $560, averaging to a fee of approximately $450 per hour. *See* Monthly Invoice Summaries at 24, ECF No. 124, Ex. 9. The attorney who handled the case at Braun billed at an hourly rate of $275. *Id.* SolarWorld argues that Orrick should have hired Braun in the first place because Miller is more expensive and not truly local. However, given the scope and complexity of the case, it was not unreasonable for Orrick to hire a Detroit-based firm with extensive practice before this Court in the more populous Southern Division. Further, the rates charged by counsel from Braun and Miller, firms

with experience in the Northern Division of the Court, are roughly comparable to the 75th percentile hourly billing rates for attorneys in comparably-sized firms. *See* Economics of Law Survey at 5. The mean hourly billing rate for firms of over 50 attorneys is $377 per hour, while the 75th percentile billing rate is $475. Miller's averaged hourly rate comes between those two numbers, which is reasonable given Miller's reputation for quality work. The hourly rate charged by Braun, $275, is actually lower than the mean hourly fee for attorneys in firms of between 21 and 50 attorneys. Accordingly, the Court finds that the actual billing rates of the local counsel retained by Orrick were reasonable.

### 4.

SolarWorld is challenging Hemlock's request for costs, including support staff, as unsubstantiated. SolarWorld is not specifically challenging the hourly rates charged by Orrick paralegals or the hourly rates charged by Orrick's team of discovery attorneys. However, for completeness and because Orrick's use of support staff is an important factor in the Court's finding that the requested fees as a whole are reasonable, the support staff's billing rates will be discussed. Orrick's usage of support staff has substantially reduced the amount of time Orrick's higher billing attorneys needed to devote to the case. The practice of lowering litigation costs by utilizing lower billing support staff and document review teams should be encouraged, as it results in "blended fees" that are substantially lower than the fees otherwise would be. In this case, Orrick's blended fee comes to approximately $470 per hour. As already noted, that hourly rate is right in line with the rates for large Michigan firms in the 75th percentile. Economics of Law Survey at 5. Because Orrick's use of support staff and document review teams has resulted in lower total fees and a reasonable "blended fee," the Court finds that the actual billing rates of Orrick's support staff and document review teams were reasonable.

-13-

**B.**

Having determined the reasonable hourly rates for each attorney or class of attorneys involved in representing Hemlock, the next step is determining the reasonable number of hours expended by each attorney. *Smith*, 481 Mich. at 532. In Smith, the court indicated that excessive, redundant or unnecessary hours should be excluded. *Id.* at 523 n.17. *See also Van Elslander*, 297 Mich. App. at 239. The Court does not have the resources to exhaustively audit every line of Orrick's invoices. Rather, the "essential goal in [awarding reasonable fees] is to do rough justice, not to achieve auditing perfection*." Fox v. Vice*, 563 U.S. 826, 838 (2011). Given the complex and prolonged nature of this litigation, a significant number of hours is to be expected. The Court will address SolarWorld's objections to Orrick's invoices in turn.

**1.**

First, SolarWorld argues that Orrick should not be compensated for hours that Orrick billed prior to suing SolarWorld. SolarWorld asserts that the supply agreements provided only for attorney fees incurred in enforcing the contract, but SolarWorld does not cite any authority for the proposition that pre-suit work is not encompassed in "enforcement." The relevant provision from the supply agreements states, in part: "Buyer [SolarWorld] shall be liable to [Hemlock] for all costs, including attorney fees, incurred by [Hemlock] in enforcing the Agreement and in collecting any sums owed by Buyer [SolarWorld] to [Hemlock]." Supply Agreements I, II, and III at Section 26. The language is broad enough to cover pre-litigation legal expenses, and limiting Hemlock's recovery only to legal work performed after litigation was commenced would not fully compensate Hemlock for all costs incurred in "enforcing the agreement." Commencing litigation to enforce a contract should be the last resort for a party. Rather, parties to a contract have an obligation to attempt to resolve the dispute amicably. And

pre-litigation legal work is a natural part of that process. Hemlock would be expected to engage an attorney to research the strength of its enforcement claim and to communicate with the breaching party's attorneys. Accordingly, the legal expenses Hemlock incurred in exploring whether and how to enforce its contracts is covered by the attorney fees provision. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 127 F.R.D. 127, 128 (N.D. Ill. 1988) (awarding pre-litigation expenses under the contract because "the cost-shifting provision is broad and covers any expenditures relating to the enforcement of Solar Equity's rights under the lease"). Further, the Court has reviewed the hours billed by Orrick in the invoices that SolarWorld challenges and finds that, although Orrick was quite thorough, the time spent was not excessive or unreasonable. *See* Detailed Monthly Invoices (Redacted) at 1–14.

## 2.

SolarWorld next argues that the remainder of Orrick's invoices evidence a pattern of excessive billing and duplicative hours. SolarWorld's first objection is that Orrick billed 153.6 hours of team meetings. SolarWorld reached that number by adding up all hours billed in specific entries that included a staff meeting, even if other tasks were also described in the entry. *See* Def. Br. at 8, n. 8. To begin with, the Court notes that the mere fact that Orrick attorneys had frequent staff meetings is not per se evidence of excessive billing. This litigation was complex, involving several teams of attorneys from several different offices, including overseas offices. Internal meetings were doubtless necessary to coordinate the different aspects of the representation. Regardless, the Court has reviewed the invoices which SolarWorld specifically identifies as problematic. Two of the largest entries involving meetings will be quoted here. On June 5, 2014, Mr. Ansbro billed 8.7 hours for the following:

> Telecon with M. Egan and Hemlock team regarding damages issues; review J. Finnerty's draft expert report and confer with team regarding same; conference

-15-

call with Finnterty and his team; review and comments to draft Rule 26 disclosure for both experts; meet with S. Cherny and M. Wicker regarding draft report; review letter from Deutsche Solar Counsel, L. Elliot, seeking schedule adjustment, confer with team regarding same and telecon with Elliot; follow-up telecons with M. Egan.

Detailed Monthly Invoices (Redacted) at 128.

On July 23, 2014, Mr. Kidera billed 9.8 hours for the following:

Confer with team [redacted]; confer with team re: deposition defense; manage deposition logistics; review and analyze documents in re: G. Homan and J. Rinaldi deposition preparation; draft G. Homan and J. Rinaldi deposition preparation outlines and materials.

Detailed Monthly Invoices (Redacted) at 143.

Those two invoice entries are representative of Orrick's billing practices. In fact, these two invoices reflect instances where Orrick attorneys spent the most time engaged in internal meetings. But the entries also contain a number of other activities, like reviewing and drafting documents, which would be expected to take significant time. Given the substantial number of distinct activities described in these entries, the Court finds that the number of hours billed is reasonable. SolarWorld argues that Orrick attorneys "block bill" time routinely, making it impossible for SolarWorld to specifically contest the hours spent on specific tasks. But Orrick has submitted over 350 pages of monthly invoices which, for the most part, specifically list multiple activities per entry. Requiring further specificity from Orrick would be both impracticable and unreasonable. An independent review of the invoices has satisfied the Court that Orrick spent substantially less than 153.6 hours engaged in internal meetings and that the number of entries which list internal meetings was reasonable and consistent with the complexity of the lawsuit.

SolarWorld next argues that Orrick is not entitled to hours billed when multiple Orrick attorneys attended depositions, but only one spoke. The Court, too, is skeptical that three Orrick

attorneys were necessary to assist in the depositions which took place in London. But the Court finds that SolarWorld's argument is disingenuous because Defendants also had three attorneys present. *See* Counsel Appearances for London Depositions, ECF No. 128, Ex. 6. The Court declines to penalize Orrick for bringing a similar number of attorneys to a deposition as opposing counsel.

SolarWorld additionally argues that Orrick attorneys consistently billed for duplicative work. The only example SolarWorld provides is the hours billed by seven attorneys working on Hemlock's motion for summary judgment. However, the mere fact that multiple attorneys worked on Hemlock's motion for summary judgment is not, by itself, evidence of unnecessary or duplicative billing. If only Mr. Ansbro and Mr. Coll had worked on the motion for summary judgment, the total bills would have been much higher. Thus, a decision to delegate research and drafting on the motion is not per se evidence of duplicative work. After an independent review of the record, the Court concludes that SolarWorld's calculation of hours spent on the motion for summary judgment likely overstates the actual amount of time billed in preparation of the motion. There can be no doubt that Orrick spent a considerable amount of time researching and writing the motion for summary judgment. However, that is to be expected. Hemlock's motion for summary judgment and reply in support of its motion, ECF Nos. 91, 110, together totaled 63 pages and 48 exhibits. The motion covered a number of complex legal issues. Given the importance of the motion, complexity of the legal issues involved, and amount of money at stake, Orrick's hours billed in preparing the motion for summary judgment were not excessive, unreasonable, or duplicative.

Next, SolarWorld argues that Orrick attorneys billed excessive hours preparing for and attending depositions. The Court has independently reviewed the invoices entries which

SolarWorld is challenging. Many of these entries include both deposition and non-deposition related activities. Thus, the Court concludes that SolarWorld is overstating the number of hours which Orrick spent on deposition related work. Further, Orrick prepared for and conducted a significant number of depositions.[5] The number of hours Orrick has billed for deposition related work is not unreasonable in comparison to the number of depositions. Further, several of the depositions were conducted overseas and in a foreign language. The travel time and preparation necessary for these depositions would naturally result in a significant number of billed hours. Accordingly, the number of hours Orrick has billed for deposition related work is not excessive, unreasonable, or duplicative.

SolarWorld further argues that Orrick's requested award of fees should be reduced because U.S.-based Orrick attorneys and German-based Orrick attorneys both billed significant amounts of hours for work on issues related to German antitrust law. After reviewing the challenged invoices, the Court concludes that there is no evidence of excessive, unreasonable, or duplicative billing. The U.S.-based and German-based attorneys worked closely together to answer questions regarding German antitrust law. SolarWorld argues that the fact that both sets of attorneys billed on this issue is suspect, but the billings themselves support a finding that Orrick's German-based attorneys did most of the primary research. Given the potential importance of this issue to Hemlock's attempts to collect its judgment from SolarWorld, the amount of hours billed regarding the German antitrust law issue was reasonable.

Accordingly, the Court will decline to reduce Hemlock's award of attorney fees by 20%, as SolarWorld requests. In general, Orrick's invoices include a reasonable level of detail regarding billing activities. The Court finds that, for the most part, Orrick's invoices avoid

---

[5] The Court identifies invoice entries related to at least ten different depositions.

"block billing." Accordingly, the cases SolarWorld cites for the proposition that Hemlock's award should be reduced by a fixed percentage because the invoices are too vague to challenge are distinguishable. *See E.E.O.C. v. Cintas Corp.*, No. 04-40132, 2011 WL 3359622, at *7 (E.D. Mich. Aug. 4, 2011), *vacated and remanded on other grounds sub nom. Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) (reducing the award by 10% because of "brief descriptions" in the invoices and heavy redaction); *Gratz v. Bolling*er, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (reducing the award by 10% because numerous entries were "imprecise or incomplete"). Although Orrick clearly spent many hours representing Hemlock in its attempt to enforce the supply agreements, the time spent appears reasonable given the complexity of the legal issues involved, global nature of the dispute, and amount of money at stake.

### 3.

SolarWorld additionally argues that the award should be reduced because Orrick and local counsel both billed for "preparing the Complaint and arranging for service." Def. Br. at 11. In arguing that Hemlock's request for $33,000 in fees related to drafting and service of the Complaint is unreasonable, SolarWorld emphasizes that it is only 12 pages long and involves straightforward contract claims. After reviewing the invoice entries for drafting and serving the Complaint, the Court concludes that the request is not unreasonable. Because SolarWorld is a foreign corporation, the firms representing Hemlock had to research and resolve the issues raised by the need for foreign service. Further, because the Complaint included the supply agreements, which themselves contained confidential information, the firms representing Hemlock had to draft a motion requesting leave to file the exhibits accompanying the Complaint under seal. *See* ECF Nos. 3, 8. Thus, drafting and serving the Complaint against SolarWorld was not as straightforward as SolarWorld represents. The hours billed were not unreasonable.

-19-

## 4.

SolarWorld next objects to the attorney fees that Orrick is attempting to recover for time spent opposing a motion to file an *amicus curiae* brief which Kyocera Corporation ("Kyocera") filed in this action. *See* ECF No. 104. The Court denied that motion on July 13, 2016, but Orrick spent time preparing the brief opposing Kyocera's motion. *See* ECF No. 110. Kyocera is the Defendant in a substantially similar suit that Hemlock has brought, also pending before this Court. *See Hemlock Semiconductor Corp. v. Kyocera Corp.*, No. 15-cv-11236 (E.D. Mich.). SolarWorld and Kyocera are represented by different firms. SolarWorld argues that it should not be required to pay for Orrick's work in opposition to Kyocera's motion because SolarWorld did not create that work. Hemlock counters by arguing that SolarWorld and Kyocera have worked closely together. As evidence of that, Hemlock notes that Kyocera tried to consolidate the two suits, tried to join this suit as *amicus curiae*, and sent a subpoena to Hemlock requesting documents related to the present action. *See* Pl. Reply Br. at 6; Letter, ECF No. 130, Ex. A.

Granting Hemlock attorney fees for work that Orrick did opposing motions by a third party would overcompensate Hemlock. The contracts which Hemlock is seeking to enforce against Kyocera also include identical provisions providing for the payment of attorney fees. *See* Long-Term Supply Agreement, I–III, ECF No. 38, Exs. 4, 5, 6, No. 15-cv-11236. Accordingly, Hemlock will be able to recover attorney fees incurred in enforcing its contracts against Kyocera if it is successful in that action.[6] Further, there is reason to believe that Hemlock would be able to recover the fees incurred in defending against Kyocera's motion in *this* case if Hemlock prevails in its direct suit against Kyocera. *See Poly-Flex*, 600 F. Supp. 2d at 913–14 (holding that Michigan law presented "no impediment" to awarding fees and costs under contractual

---

[6] The *Kyocera* case is currently stayed. *See* ECF Nos. 121, 123, No. 15-cv-11236.

provisions for expenses incurred in other proceedings). Because SolarWorld was not the reason Hemlock incurred these expenses and because Hemlock will have another opportunity to recover these fees, Hemlock will not be awarded the fees related to Hemlock's opposition to Kyocera's motion.

In its argument, SolarWorld cites to Orrick invoices related both to Orrick's efforts responding to SolarWorld receipt of a protective order from Kyocera and to Orrick's response to Kyocera's motion to file an *amicus* brief. After receiving the subpoena from Kyocera, SolarWorld indicated that it would comply. Because many of the documents Kyocera was seeking contained confidential information, Hemlock sought to enforce the Court's previous order sealing documents and thus prevent SolarWorld from providing the documents. *See, e.g.,* ECF No. 41, 42. Because Orrick's work related to the subpoena was enforcing an order entered in this case and was at least partially in response to action taken by SolarWorld, Hemlock will be awarded those fees.

The invoice for services rendered through April 30, 2016, includes multiple entries for work related to Kyocera's motion for leave to file an *amicus* brief. *See* Detailed Monthly Invoices (Redacted) at 247–53. The Court has independently reviewed that invoice and calculated the hours billed regarding Kyocera's motion. The Orrick attorneys sometimes do not specify how much of a single entry is dedicated to work on the Kyocera motion, as opposed to work on the briefing related to other projects, like the motion for summary judgment. In those cases, the Court will refuse to credit the entry at all, instead of attempting to arbitrarily weight the hours according to the different activities listed. The Court's review reveals that Mr. Ansbro spent 23.4 hours working on the response to the Kyocera motion, which totals $18,016.83 under his discounted fee ($885 discounted by 13% and multiplied by 23.4). Mr. Coll spent 1.3 hours,

-21-

which totals $1,238.45 under his discounted fee ($1,095 discounted by 13% and multiplied by 1.3). Mr. Howard spent 11.8 hours, which totals $4,619.70 under his discounted fee ($450 discounted by 13% and multiplied by 11.8). Mr. Kidera spent 1.3 hours, which totals $791.70 under his discounted fee ($700 discounted by 13% and multiplied by 1.3). Mr. Lee spent 31.6 hours, which totals $19,244.40 under his discounted fee ($700 discounted by 13% and multiplied by 31.6). Mr. Orenstein spent 1 hour, which totals $582.90 under his discounted fee ($670 discounted by 13% and multiplied by 1). Mr. Robertson spent 12.3 hours, which totals $8,186.27 ($765 discounted by 13% and multiplied by 12.3). Together, the post-discount total for the time Orrick spent responding to Kyocera's motion comes to $52,680.25. Hemlock will not be awarded those fees, and that amount will be subtracted from the total amount of fees that Hemlock is requesting.

**5.**

SolarWorld also argues that Orrick's fees should be reduced because the invoices do not account for the "efficiency factor" which comes from serving as counsel of record for Hemlock in "12 other lawsuits concerning Hemlock supply agreement [sic] similar to this one." Tierney Decl. at 2, ECF No. 124, Ex. 1. SolarWorld requests, at minimum, an efficiency factor reduction of 1/12, or 8.3%. In response, Hemlock argues that "[e]ach case presents a distinct set of factual and legal issues across a wide variety of jurisdictions and governing law." Pl. Reply Br. at 6. As already noted, the supply agreements in the *Kyocera* litigation are very similar to the supply agreements between Hemlock and SolarWorld in this action. Accordingly, SolarWorld's argument that there must be overlapping factual and legal issues has some force. But SolarWorld's request for an 8.3% reduction is completely arbitrary. It is supported by no specific facts or examples of duplicative work. Although Hemlock bears the burden of showing that the

-22-

fees it has requested as reasonable, *see Smith*, 481 Mich. at 528, SolarWorld has not adequately supported this novel theory for a reduction. SolarWorld has not specifically indicated which billed hours were redundant given work Orrick has done in other cases. In fact, it is equally likely that Orrick's work in other cases has allowed it to bill fewer hours while representing Hemlock in this present dispute. SolarWorld has not provided evidence that Orrick actually "double-billed" Hemlock. Because granting a reduction of any kind would be arbitrary and unrelated to any actual proof of excessive or duplicative billing, the Court declines to impose a reduction for an "absent efficiency factor.

### 6.

Finally, SolarWorld argues that Hemlock's request for reimbursement of costs should be denied because Hemlock has not adequately documented the basis for those expenses. In support, SolarWorld cites *Smith*, 481 Mich. at 528, for the proposition that Hemlock bears the burden of proof. But the Michigan Supreme Court's decision in *Smith* is ambiguous as to whether the analysis it outlines applies to non-attorney fee costs also. The Court is unable to locate Michigan precedent that directly addresses this issue. Further, it is noteworthy that the *Smith* analysis seems ill-suited to consideration of extraneous litigation costs.[7] Regardless, the Court finds that Hemlock has adequately supported its request for reimbursement of non-attorney fee costs. The monthly invoices submitted by Orrick include a separate section for "disbursements" each month which provides the category and total amount. Although the expenses are not itemized, the Court has reviewed the requested disbursements and finds that the requested sums seem reasonable given the circumstances.

### 7.

---

[7] For example, what would be appropriate, non-anecdotal evidence of the customary rate in the locality for expert expenses or out of town meals?

In short, the Court finds that, for the most part, Orrick has billed a reasonable number of hours. Under the second stage of the analysis in *Smith*, the Court must multiply the reasonable hourly rate by the reasonable number of hours billed. *Id.* at 231. Because the Court has found that the actual rates charged by Orrick were customary given the circumstances, the total amount of fees that Hemlock is entitled to will be the amount actually asked for, minus the $52,680.25 incurred by Orrick in response to Kyocera's motion. Accordingly, the second stage of the *Smith* analysis results in a baseline award of $3,572,663.60.

### C.

Under the third and final prong of the *Smith* analysis, Courts must analyze eight different factors and determine whether an upward or downward adjustment is appropriate. Those eight factors are as follows:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services, (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, (3) the amount in question and the results obtained, (4) the expenses incurred, (5) the nature and length of the professional relationship with the client, (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer, (7) the time limitations imposed by the client or by the circumstances, and (8) whether the fee is fixed or contingent.

*Pirgu*, 499 Mich. at 282.

Courts should avoid "duplicative consideration" of the factors already considered. *Smith*, 481 Mich. at 532.

These factors further support a finding that Orrick's requested fees are reasonable but do not justify a further adjustment. To begin with, the Orrick lawyers who did the primary work on this case have extensive experience working on complex civil litigation. Mr. Coll has over 50 years of experience and has litigated a significant number of complex civil cases. Coll Bio., ECF

No. 124, Ex. 3. Mr. Ansbro has over twenty years of litigation experience and has likewise represented a variety of corporations in a number of complex actions. Ansbro Bio., ECF No. 124, Ex. 4. Mr. Robertson, Mr. Lee, and Mr. Kidera have similarly impressive resumes which are commensurate with the rates they charge. Robertson, Lee, Kidera Bios., ECF No. 124, Ex. 5.

As to the second factor, Hemlock's dispute with SolarWorld is international in scope and encompasses a number of complex legal issues, many already mentioned. Hemlock had to serve a foreign corporation, research foreign antitrust law, conduct overseas depositions, and interpret and enforce several sophisticated delivery contracts.

The third factor likewise supports a considerable fee award. Hemlock prevailed entirely on its motion for summary judgment, resulting in an award of $793,467,822.91. As Hemlock asserts, it is asking for attorney fees which are less than one-half of one percent of the total award ($3,572,663.60 divided by $793,467,822.91 equals approximately .450%). Given Hemlock's success on its motion for summary judgment, as well as the large judgment awarded, Hemlock's request for attorney fees is reasonable.

Fourth, Hemlock sustained considerable expenses during the litigation. As already noted, enforcement of a complex, international contract dispute will necessarily involve considerable expense. Further, Hemlock has already paid Orrick for the legal expenses billed.

Fifth, Hemlock and Orrick have a significant relationship. In his declaration, Hemlock's General Counsel, John Tierney, asserted that Orrick and Hemlock have a "longstanding relationship." Tierney Decl. at 2. Specifically, Orrick advised Hemlock on the supply agreement at question here "eight years ago." *Id.* Additionally, Orrick is representing Hemlock in "12 other lawsuits concerning Hemlock supply agreement [sic] similar to this one." *Id.*

Factors six, seven, and eight appear irrelevant to the current request for attorney fees and thus will not be considered. *See Doe v. Doe*, No. 307420, 2014 WL 6852750, at *22 (Mich. Ct. App. Dec. 4, 2014).

In short, all of the relevant factors in this case support the award of a significant fee. Although the Court independently found that the actual hourly rates billed by the Orrick attorneys were customary given the scope and complexity of this kind of litigation, the Court's analysis of these factors alternatively supports granting Hemlock the requested fees. To the extent Hemlock may not have satisfied its burden of showing that the requested fees are customary in the locality under prong one of the *Smith* analysis, the prong three analysis alternatively justifies the requested hourly rates. However, because Hemlock is requesting a considerable fees award, the Court declines to further increase the attorney fee award based on the *Smith* factors. Thus, Hemlock will be awarded fees in the amount of the baseline figure the Court calculated at the end of the analysis of the second *Smith* factor: $3,572,663.60.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Hemlock Semiconductor Corporation motion for attorney fees, ECF No. 124, is **GRANTED in part.**

It is further **ORDERED** that Defendant SolarWorld Industries Sachsen GmbH is **DIRECTED** to compensate Plaintiff Hemlock Semiconductor Corporation **$3,572,663.60** for costs and fees incurred in enforcing its supply agreements.


Dated: November 2, 2016                           s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

-26-

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 2, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager