UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION,

                      Plaintiff,                      Case No. 13-cv-11037

v.                                            Honorable Thomas L. Ludington

SOLARWORLD INDUSTRIES SACHSEN
GmbH, f/k/a DEUTSCHE SOLAR GmbH,
f/k/a DEUTSCHE SOLAR AG,

                      Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL RESPONSES TO POST-JUDGMENT DISCOVERY, SETTING DEADLINE AND GRANTING MOTION FOR LEAVE TO FILE SURREPLY**

        On March 7, 2013, Plaintiff Hemlock Semiconductor Corporation ("Hemlock") filed suit against Defendant SolarWorld Industries Sachsen GmbH ("Solarworld"). ECF No. 1. The dispute between the parties arises from a series of large-scale contracts for industrial-grade polycrystalline silicon from Hemlock to SolarWorld. On March 16, 2016, Hemlock filed a motion for summary judgment. ECF No. 91. On July 13, 2016, the Court granted summary judgment for Hemlock. ECF No. 120. The Court entered final judgment for Hemlock in the amount of $793,467,822.91. ECF No. 123. On August 9, 2016, Hemlock filed a motion requesting that it be awarded $2,867,892.47 in attorney's fees and $757,451.38 in costs and expenses, for a total of $3,625,343.85. ECF No. 124. On November 2, 2016, the Court awarded Hemlock attorney fees in the amount of $2,815,212.22 and costs in the amount of $757,451.38, for a total of $3,572,663.60. ECF No. 136.

        On October 3, 2016, Hemlock filed a motion to compel responses to post-judgment discovery requests. ECF No. 132. In the motion, Hemlock argues that SolarWorld has refused to

fully respond to Hemlock's post-judgment discovery requests. In response, SolarWorld argues that discovery regarding SolarWorld's German assets is irrelevant because SolarWorld believes that European Union and German antitrust law will bar enforcement of the judgment in Germany. SolarWorld also argues that Hemlock's discovery requests are unduly burdensome in scope and detail. For the reasons stated below, Hemlock's motion will be granted in part.

**I.**

The underlying facts of the dispute are summarized in the Court's order granting summary judgment, ECF No. 120, and order granting Hemlock's motion for attorney fees and costs in part, ECF No. 136. The facts outlined in those orders will be adopted as if fully restated herein. Because relevant to the motion to compel, the post-judgment developments in this suit will also be outlined.

After summary judgment was granted for Hemlock, SolarWorld filed an appeal. However, SolarWorld has not sought a stay of execution of the judgment. *See* Coll Decl. at ¶ 2, ECF No. 132, Ex. 1. On August 22, 2016, Hemlock served discovery requests on SolarWorld for the purpose of identifying assets that may be available to satisfy the judgment. Interrogatories, ECF No. 132, Ex. 2; Document Requests, ECF No. 132, Ex. 3. SolarWorld requested a ninety day extension of time to respond to the discovery requests. Elliot Letter, ECF No. 132, Ex. 7. Although Hemlock was unwilling to agree to a ninety day extension, Hemlock agreed to accept a "reasonable extension." Ansbro Letter, ECF No. 132, Ex. 8. On September 26, 2016, SolarWorld served Hemlock with its objections and responses to the discovery requests. Obj. Interrogatories, ECF No. 132, Ex. 9; Obj. Document Requests, ECF No. 132, Ex. 10. In those responses, SolarWorld refused to disclose information about SolarWorld's assets located outside of the United States, arguing that EU and German law rendered the underlying judgment unenforceable

in Germany. SolarWorld also challenged the scope of the discovery. The parties unsuccessfully attempted to resolve the dispute over the discovery requests. On October 3, 2016, Hemlock filed a motion to compel more detailed responses to its discovery requests. ECF No. 132.

## II.

Pursuant to Federal Rule of Civil Procedure 69(a)(2), a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." The rules governing post-judgment discovery are "quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014). "The general rule in the federal system is that, subject to the district court's discretion, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Id.* (quoting Fed. R. Civ. Pro. 26(b)(1)). Importantly, "'the presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the judgment.'" *Ordos City Hawtai Autobody Co., Ltd v. Dimond Rigging Co.*, LLC, No. 13-14909, 2016 WL 5219537, at *1 (E.D. Mich. Sept. 22, 2016) (quoting *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430–31 (8th Cir. 1998)).

Despite its broad scope, post-judgment discovery is not limitless. Rather, post-judgment discovery is "constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012*), aff'd sub nom. NML Capital, Ltd.*, 134 S. Ct. 2250. *See also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012) ("[A]sset discovery should be tailored to the specific purpose of enabling a judgment creditor to discover assets upon which it can seek to execute a judgment and . . . not devolve into a fishing expedition for irrelevant or cumulative

information."). Judgment creditors may "seek disclosure related to assets held outside the jurisdiction of the court where the discovery request is made." *EM Ltd.*, 695 F.3d at 207 (citing *First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002)). Importantly, "the district court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments." *Id.* at 208.

### III.

#### A.

As an initial matter, SolarWorld has filed a motion for leave to file a surreply further opposing Hemlock's motion to compel responses. ECF No. 137. SolarWorld has attached the surreply as an exhibit to the motion. In the interest of allowing both parties to thoroughly brief the issues before the Court, SolarWorld's motion will be granted and the surreply will be accepted as filed.

#### B.

SolarWorld argues, first, that Hemlock's discovery requests, as least as they relate to SolarWorld's foreign assets, are not "reasonably calculated to lead to the discovery of attachable property" because supply agreements are unenforceable under EU and German antitrust law. SolarWorld attempted to raise this argument as an affirmative defense earlier in the litigation. *See* Answer at 11, ECF No. 14. The Court struck that affirmative defense after extensive briefing of SolarWorld's defense and the controlling precedent. Order Granting in Part Mot. Strike, ECF No. 66. The Court explained:

> Deutsche Solar does not claim that the market transactions contemplated under the agreements are inherently illegal under EU antitrust law. Instead, Deutsche

> Solar claims that the agreements are illegal under EU antitrust law if Hemlock's market conduct transgresses certain EU-defined market conditions. As a result, it requests discovery on that point.
> . . .
> The Supreme Court has determined that in such circumstances, the possibility of illegality, when that illegality resides in a violation of antitrust laws, cannot sustain an affirmative defense of illegality. Deutsche Solar's defense will be stricken.

*Id.* at 18–19.

SolarWorld immediately filed a motion for reconsideration of the Court's order striking the affirmative defense. Mot. Reconsideration, ECF No. 67. In the order denying that motion for reconsideration, the Court clarified its rationale for striking the affirmative defense:

> [T]he Court did not hold and does not now hold that the Agreements do not violate EU antitrust law. What the Court held in its May 7, 2015 Opinion and what it reaffirms now is: even assuming the combination of the provisions violates EU antitrust law, an affirmative defense predicated on that form of illegality is not cognizable and must be stricken.

*Id.* at 12.

The Court further acknowledged that

> [i]t can be conceded that the [relevant precedent] creates situations where a defendant has a meritorious claim that the contract sued upon violates antitrust law but cannot rely on that claim as an affirmative defense. But that would only be a cause for greater concern if the defendant did not have other avenues for relief. Defendants do have such avenues, ameliorating any concern that they may not receive their day in court.

*Id.* at 14–15.

Now, the parties dispute whether Hemlock may seek discovery into SolarWorld's foreign assets notwithstanding the antitrust defense which SolarWorld will presumably raise when Hemlock attempts to enforce the judgment in Germany. SolarWorld argues that the requested discovery is not reasonably calculated to lead to attachable property because the supply agreements will be held unenforceable under German and EU law. Hemlock argues that the right

to conduct post-judgment discovery exists even if the plaintiff will face challenges to attachment of the property.

Both parties cite *EM Ltd. v. Republic of Argentina* in support of their position. 695 F.3d 201. In *EM LTD*, the Republic of Argentina had defaulted on its sovereign bond obligations. *Id.* at 203. At least one creditor brought suit in the Southern District of New York. *Id.* That plaintiff obtained money judgments which totaled approximately $2.5 billion dollars. *Id.* The plaintiff sought discovery regarding Argentina's property held domestically and abroad, and Argentina challenged the plaintiff's discovery requests as violative of its sovereign immunity. *Id.* at 204. The district court allowed discovery into Argentina's extraterritorial assets, but denied discovery into Argentinian-based assets. *Id.* at 204–205. The Second Circuit summarized the district court's reasoning as follows:

> the district court noted that "there is no use getting information about something that might lead to attachment in Argentina because that would be useless information" as no Argentinian court would allow sovereign property to be attached within the country. JA 1868. Thus, the district court, while open to discovery of assets abroad, sought to limit the subpoenas to discovery that was reasonably calculated to lead to attachable property.

*Id.*

On appeal, Argentina argued that the discovery order regarding extraterritorial assets violated the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* Specifically, Argentina argued that "its property abroad [was] categorically immune from attachment." *Id.* at 208. In rejecting that argument as a defense to the discovery order, the Second Circuit explained: "the district court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments." *Id.* The *EM Ltd.* Court further reasoned that "[w]hatever hurdles NML will face before ultimately

attaching Argentina's property abroad (and we have no doubt there will be some), it need not satisfy the stringent requirements for attachment in order to simply receive information about Argentina's assets." *Id.* at 209. Thus, the Second Circuit affirmed the district court's discovery order.

On appeal, the United States Supreme Court also affirmed. *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. at 2257. In the opinion, the Supreme Court considered and rejected Argentina's argument that "if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property":

> [T]he reason for these subpoenas is that NML does not yet know what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law. If, bizarrely, NML's subpoenas had sought only "information that could not lead to executable assets in the United States or abroad," then Argentina likely would be correct to say that the subpoenas were unenforceable— *not* because information about nonexecutable assets enjoys a penumbral "discovery immunity" under the Act, but because information that could not possibly lead to executable assets is simply not "relevant" to execution in the first place, Fed. Rule Civ. Proc. 26(b)(1); N.Y. Civ. Prac. Law Ann. § 5223.4 But of course that is not what the subpoenas seek. They ask for information about Argentina's worldwide assets generally, so that NML can identify where Argentina may be holding property that is subject to execution. To be sure, that request is bound to turn up information about property that Argentina regards as immune. But NML may think the same property not immune. In which case, Argentina's self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter.

*Id.* at 2257–58.

Hemlock cites several other cases as additional support for the proposition that a plaintiff need not prove that assets are subject to execution before discovery concerning those assets is permitted. *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 35 (D.D.C. 2015) ("[T]his Court will not impose the perhaps impossible burden on Continental to demonstrate, as a threshold matter, what Nigerian assets are subject to execution under the FSIA

before permitting discovery concerning those assets to proceed."); *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) ("Forcing Petitioners to show that property is attachable before permitting them to gain any information about Respondent's assets would present an insurmountable Catch–22 for judgment creditors seeking to enforce a valid judgment."); *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 90CIV.2370(JFK)(FM), 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000) ("[T]he mere possibility that the judgment in this case might, as a practical matter, eventually be rendered unenforceable by another court should not bar ACIC from seeking timely information regarding La Republica's assets.").

SolarWorld does not attempt to distinguish the cases cited by Hemlock or provide authority, besides *EM Ltd.*, which supports its position. Rather, SolarWorld argues that the information sought by Hemlock would be "useless information" because "neither the German courts nor the courts of other European Union countries would allow the attachment of property under a judgment offensive to the antitrust laws of those countries." Def. Resp. Br. at 10. SolarWorld analogizes to the district court's decision in *EM Ltd.* to deny discovery into discovery of Argentinean-based assets because "no Argentinian court would allow sovereign property to be attached within the country." 695 F.3d at 204.

SolarWorld's arguments are unpersuasive. SolarWorld is attempting to reintroduce the antitrust defense which was already briefed by the parties and rejected as non-cognizable by this Court twice. In its brief, SolarWorld simply summarizes and cites to its previous arguments on this issue. *See* Def. Resp. Br. at 8–9. Before, the Court declined to rule on the merits of the antitrust defense because that argument is not cognizable as an affirmative defense. SolarWorld simply assumes that it will prevail in its antitrust defense once raised in German or EU courts.

Perhaps that belief will prove to be accurate. However, this Court cannot assume that assertion to be true, and the Court does not believe that SolarWorld would have entered into the contracts originally if it believed them to be unenforceable. This Court has already ruled that the contracts were not patently illegal under EU antitrust law. Order Denying Mot. Reconsideration at 14. The Court did recognize that the combination of "the take-or-pay and non-resale provisions combine . . . , under certain market conditions, [to] violate EU antitrust law." *Id.* at 12. But the Court did not conclude that those market conditions were present here or that the parties knew those conditions might exist when they entered into the agreements. Those issues must be decided in German or EU courts. In short, the argument that SolarWorld is making requires legal and factual findings which this Court cannot resolve. Hemlock argues that SolarWorld's antitrust argument is "baseless and untenable as a matter of foreign law." Mot. Compel at 12. SolarWorld believes otherwise. But because that legal question is unresolved, SolarWorld's potential defense to enforceability and attachment is not a defense to Hemlock's discovery requests. Like in *Republic of Argentina*, Hemlock's requests will "turn up information about property that [SolarWorld] regards as immune. But [Hemlock] may think the same property not immune. In which case, [SolarWorld's] self-serving legal assertion will not automatically prevail." *Id.* at 2258.

Hemlock does not bear the burden of proving that it will eventually recover the judgment. *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. at 35. The possibility that SolarWorld may prevail in its defense, even if highly likely, is not sufficient to render the information sought "useless." *See EM Ltd.*, 695 F.3d at 204[1]; *British Int'l Ins. Co. v. Seguros La*

---

[1] SolarWorld's primary legal authority in support of its argument that the discovery sought is useless is the district court's decision to deny access to discovery regarding Argentinian-based property in *EM Ltd*. But that issue was not appealed to either the Second Circuit or the Supreme Court. At best, the Second Circuit noted that aspect of the district court's decision with approval. But the fact remains that SolarWorld is presenting as legal support for its

- 9 -

*Republica, S.A.*, 2000 WL 713057, at *5 ("[T]he mere possibility that the judgment in this case might, as a practical matter, eventually be rendered unenforceable by another court should not bar ACIC from seeking timely information regarding La Republica's assets."). Because SolarWorld's antitrust argument was not cognizable as an affirmative defense to SolarWorld's breach of the supply agreements, it cannot serve as a defense to Hemlock's discovery requests, especially considering the extremely broad scope of post-judgment discovery. Additionally, even if the antitrust defense is successful, the discovery sought by Hemlock may point towards other assets outside Germany which Hemlock could execute upon. Accordingly, SolarWorld will be directed to comply with Hemlock's discovery requests as they concern SolarWorld's international assets.

**B.**

SolarWorld is also objecting to Hemlock's discovery requests because the scope of the requests is unduly burdensome, because Hemlock is seeking confidential information, and because Hemlock's interrogatories exceed the permissible number of interrogatories.

**1.**

First, SolarWorld objects to Hemlock's interrogatories which seek information regarding SolarWorld's assets and transactions for the last five years. Interrogatory Six reads as follows: "Identify, by name, description, and location, all persons or entities to whom Sachsen has sold any of its products or goods within the last five (5) years." Interrogatories at 8. Interrogatory Seven is similarly broad:

> Identify by description, value, date, and amount, all transfers of funds, goods, products, or assets of any value by, among, or between SolarWorld Industries Sachsen GmbH, f/k/a Deutsche Solar GmbH, f/k/a Deutsche Solar AG, and any affiliate or related entities, including but not limited to SolarWorld, at any time in

---

argument a single line of dicta summarizing a district court decision in a circuit court opinion which holds only persuasive value for this Court.

> the last five years, including but not limited to the intercompany sale or transfer or manufactured products or goods purchased, by and among those entities.

*Id.*

Similarly, Document Request Five asks for "Documents and Communications sufficient to identify all persons or entities to whom Sachsen has sold any of its products within the last five (5) years." Document Requests at 8.

SolarWorld argues that the five-year timeframe, in connection with the level of specificity requested, would create undue hardship for SolarWorld if complied with. SolarWorld emphasizes that Hemlock is requesting information about all transfers or transactions of *any* value. SolarWorld has attached a Declaration by Holger Reetz, SolarWorld's managing director, which explains that the company employs over 1,200 individuals and "conducts approximately 4,500 accounting related transactions every week." Reetz Decl. at 2, ECF No. 134, Ex. A. For that reason, SolarWorld argues that complying with Hemlock's discovery requests would be unduly burdensome. SolarWorld requests that the Court limit the scope of the discovery requests to transactions of €100,000 or more. In support, SolarWorld cites *BR N. 223, LLC v. Glieberman*, No. 13-50297, 2013 WL 6482455, at *2 (E.D. Mich. Dec. 10, 2013), where Magistrate Judge Whalen approved as not unduly burdensome requests for information regarding all transfers of $100,000 or more.

Hemlock argues that the five-year timeframe is important because it will reveal whether SolarWorld has engaged in any attempts to sequester assets such that Hemlock will be unable to execute against them. Hemlock also notes that the plaintiff, not the court, created the monetary threshold in *Glieberman* and argues that no limitation is appropriate here.

In general, the scope of discovery is broad. *See* Federal Rule of Civil Procedure 26(b)(1). However, the Court may limit the scope of discovery if "the burden of expense of the proposed

discovery outweighs its likely benefit." *Id.* Here, full compliance would impose a substantial burden on SolarWorld, and Hemlock cannot reasonably argue that its efforts at execution will be aided by disclosure of transactions of negligible value. Hemlock is attempting to enforce a judgment of approximately $800,000,000, meaning small asset transfers are of limited relevance. A monetary threshold of €10,000 will strike a balance whereby the burden of compliance will not outweigh the benefit and relevance of the discovery. With that limitation in place, SolarWorld will not be unduly burdened by Hemlock's discovery requests.

**2.**

SolarWorld next objects that Hemlock's discovery requests unnecessarily seek confidential information. Specifically, SolarWorld is objecting to Hemlock's requests for identification of all persons or entities that SolarWorld has sold products or goods to within the last five years, contained in Interrogatory Six and Document Request Five. Although SolarWorld acknowledges that customer information can be relevant to post-judgment discovery, it argues that the scope of the requests is unreasonable because compliance would cause SolarWorld competitive harm and undue burden. SolarWorld also argues that the existing protective order is insufficient protection between it does not include a provision that would shield SolarWorld's confidential customer information from Hemlock's business personnel.

In support of its request for a limitation on Hemlock's discovery requests regarding customer information, SolarWorld cites *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288 (E.D. Va. 2012). In *DuPont*, the court held that customer information was relevant when the defendant held a receivable from that customer or the customer otherwise held assets of the defendant. *Id.* at 292. The *DuPont* Court further specified information that was discoverable:

> for accounts receivable, this includes the existence of the account receivable due to [defendant], the identity of the customer that holds the receivable due to [defendant], and the amount of the account receivable. For other [defendant] assets, this includes the existence of the [defendant's] asset, a description of the asset, the identity of the customer that holds the asset, the location of the asset, and the value of the asset. [Defendant] must provide that information.

*Id.*

Hemlock argues that the customer information sought is necessary to trace SolarWorld's account receivables and assets and to ensure that no fraudulent transactions have occurred. Hemlock further asserts that the protective order, as it currently exists, is sufficient to protect SolarWorld from competitive harm, especially because the two companies are not direct competitors.

Hemlock attempts to distinguish *DuPont* by arguing that the discovery is necessary here to trace assets and investigate whether fraudulent transfers occurred. However, as SolarWorld points out, the *Dupont* Court recognized that post-judgment discovery is meant to allow the judgment creditor to trace assets and discover "'hidden or concealed assets.'" 286 F.R.D. at 291 (quoting *Caisson Corp. v. County W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa.1974)). Thus, *DuPont* is not distinguishable on the ground that Hemlock asserts. Hemlock appears to believe that SolarWorld has attempted to fraudulently transfer assets to ensure that Hemlock will not be able to execute its judgment. But Hemlock offers no evidence for that belief apart from apparent posturing by SolarWorld executives. Judgment creditors cannot engage in fishing expeditions under the guise of post-judgment discovery. *See Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 5:11-CV-281-JMH, 2012 WL 5868903, at *4 (E.D. Ky. Nov. 20, 2012). Hemlock has not substantiated its assertion that SolarWorld has fraudulently transferred assets with anything beyond bare allegations. Absent plausible indications of such transactions, the scope of the discovery requested by Hemlock is unduly burdensome.

Accordingly, SolarWorld will be ordered only to identify any accounts receivable due to SolarWorld, along with the identity of the customer holding the receivable and the amount of the receivable. Likewise, SolarWorld will be ordered to identify any SolarWorld assets held by customers, including the identity of the customer in possession of the asset, the asset's location, and the asset's value. If a former or current SolarWorld customer does not hold any receivables due to SolarWorld or any SolarWorld assets, SolarWorld does not need to disclose information regarding that customer. If Hemlock uncovers plausible evidence of fraudulent transactions, further discovery may be permitted. Given these limitations on the scope of the disclosures, the existing protective order appears sufficient to protect SolarWorld's interests.

### 3.

Finally, SolarWorld argues that Hemlock has exceeded the number of interrogatories allowed under Federal Rule of Civil Procedure 33. That rule allows a party to serve "25 written interrogatories, including all discrete subparts." *Id.* at 33(a)(1). SolarWorld argues that Hemlock served 27 interrogatories. In reaching that number, SolarWorld notes that Interrogatories Two through Five all include six subparts and counts each subpart as a discrete interrogatory.

The parties dispute whether each subpart should be counted as a discrete interrogatory. If a subpart is "'logically or factually subsumed within and necessarily related to the primary question,'" then the subpart should not be counted separately. *Powerhouse Licensing, LLC v. CheckFree Servs. Corp.*, No. 12-CV-13534, 2013 WL 1209971, at *2 (E.D. Mich. Mar. 25, 2013) (quoting *Trevino v. ABC American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)). If the subsequent subpart can stand alone, independent of the first question, then it is discrete. *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *5

(W.D. Tenn. Jan. 30, 2002) (citing *Kendall v. GES Exposition Servs. Inc.*, 174 F.R.D. 684, 685–86 (D.Nev.1997)).

Here, the subparts are all logically related to the prior question and cannot stand alone. Interrogatory Two, Three, Four, and Five all ask for descriptions of SolarWorld's assets as of a specific point in time. Each of those interrogatories includes six subparts which further specify the kinds of assets Hemlock is seeking information about. Specifically, Hemlock wants descriptions of SolarWorld's accounts, inventory, holdings/investments, receivables, intellectual property, and insurance and retirement policies. Each subpart is coherent only if read as an extension and clarification of the initial request to describe all of SolarWorld's assets. Hemlock's interrogatories are analogous to those in *Kendall*, 174 F.R.D. at 686. In *Kendall*, the court found that the following interrogatory include no discrete subparts: "State, with particularity, the value of 'KENDALL's' yearly compensation while employed by Defendants, including, but not limited to, salary, incentive payments, bonuses, life insurance, contributions to pensions plan medical insurance and state the basis by which the Defendant arrives at the value for each." *Id.* Like the plaintiff in *Kendall*, Hemlock has asked a single question and then included subparts which clarify the categories contained in the original question. The subparts in Hemlock's interrogatories are not discrete subparts. Accordingly, Hemlock has complied with the twenty-five interrogatory limit imposed by Federal Rule of Civil Procedure 33(a)(1).

**IV.**

Accordingly, it is **ORDERED** that Defendant SolarWorld Industries Sachsen GmbH's motion for leave to file a surreply, ECF No. 137, is **GRANTED.**

It is further **ORDERED** that Plaintiff Hemlock Semiconductor Corporation's motion to compel responses, ECF No. 132, is **GRANTED in part.**

It is further **ORDERED** that Defendant SolarWorld Industries Sachsen GmbH is **DIRECTED** to provide full and complete responses to Plaintiff Hemlock Semiconductor Corporation's discovery, consistent with the directives contained in this opinion and order. Defendant SolarWorld Industries Sachsen GmbH is **DIRECTED** to make the disclosures within **thirty days** of the date of this order.

Dated: December 15, 2016                             s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2016.

                                         s/Kelly Winslow for
                                         MICHAEL A. SIAN, Case Manager